In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3758

Johnny A. Outlaw,

Applicant,

v.

Jerry Sternes, Warden,
Dixon Correctional Center,

Respondent.

On Application for an Order
Authorizing a Second or Successive
Petition for Collateral Review

Submitted October 23, 2000--Decided November 21, 2000

Before Posner, Easterbrook, and Manion, Circuit Judges.

Easterbrook, Circuit Judge.  Johnny Outlaw was convicted in Illinois court of murder, armed robbery, and burglary. After exhausting all state remedies, Outlaw sought relief under 28 U.S.C. sec.2254. The district court denied his petition in 1993, and this court declined to issue a certificate of probable cause to appeal. Now Outlaw wants to commence a second federal collateral attack, which he cannot do without this court's approval under 28 U.S.C. sec.2244(b).

Outlaw's proposed theory is that he did not receive due process of law, because Thomas Maloney, the judge who presided at his trial, was not impartial. Maloney has been convicted of taking bribes to rule in defendants' favor in felony prosecutions. United States v. Maloney, 71 F.3d 645 (7th Cir. 1995). No one believes, however, that Maloney ever took a bribe to convict an innocent person, and Outlaw does not contend that any money changed hands (or even was solicited) with respect to his case. But he seeks to employ the theory recognized in Bracy v. Gramley, 520 U.S. 899 (1997): a judge bribed to acquit in some cases may lean the prosecution's

way the rest of the time, either to keep a balanced record of convictions (and thus deflect suspicion) or to demonstrate to accused persons what happens if they do not pay.

Under sec.2244(b)(2), we may authorize a second collateral attack only if

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Maloney was indicted in 1991, two years before Outlaw filed his initial collateral attack, so the factual predicate of his claim could have been discovered long ago, and at all events Outlaw does not contend that clear and convincing evidence demonstrates his innocence. That knocks out sec.2244(b)(2)(B) and requires us to decide whether Bracy establishes a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable". Bracy was itself a collateral attack, so if the rule articulated there was a "new rule" then it has necessarily been "made retroactive to cases on collateral review by the Supreme Court" as this court understands that phrase. See Talbott v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000). But did Bracy establish a "new rule"? At least one district judge in this circuit has answered "yes," see Giangrande v. Roth, 1999 U.S. Dist. Lexis 4171 (N.D. Ill. Mar. 26, 1999), but we hold that Bracy did not establish a new rule of constitutional law.

Nothing in the Court's opinion in Bracy suggests that the Justices thought that they were doing anything novel. They applied a long-established principle--that the due process clause forbids trial before a biased judge--to a

particular claim. The novelty, if any, lay in the means by which Bracy proposed to establish Maloney's bias: undertaking discovery to show that, when Maloney had not been bribed, he unduly favored the prosecution. This court held that discovery into Maloney's behavior in other cases would be unproductive and should not be allowed. 81 F.3d 684 (7th Cir. 1996). The Supreme Court, by contrast, held that Bracy was entitled to the discovery he sought. There was no dispute among the Justices about the principle that decisions by judges influenced by financial interests do not provide due process of law; the dispute concerned how that influence was to be proved. Disagreement about such procedural issues does not demonstrate that a new rule of constitutional law has been created--it does not change any of the norms that govern how criminal trials should be conducted--or indeed that Bracy was about the Constitution in the first place. The Justices did not hold, for example, that the rules of discovery in collateral attacks are beyond the power of Congress to alter. The omission from Bracy of any discussion of Teague v. Lane, 489 U.S. 288 (1989), is telling. If the Justices had supposed that they were altering constitutional standards, they would have discussed Teague's criteria for the retroactive application of new rules. The absence of such a discussion implies that the Court did not see any (constitutional) novelty in its decision and supports our conclusion that Bracy was about discovery procedure rather than constitutional substance.

What is more, it seems unlikely that Outlaw's application is timely, even if Bracy had created a new rule. Bracy was decided in June 1997, but Outlaw did not file his application until October 2000, a gap of more than three years. Given sec.2244(d)(1)(C), he had only one year from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review". Section 2244(b)(3)(A) requires our leave to file "a second or successive application permitted by this section", and an application is not "permitted by this section" (which is to say, all of sec.2244) if it is untimely. A prisoner seeking permission to commence an additional collateral attack therefore must demonstrate that the petition is timely, something Outlaw has not done.

Some of the delay since June 1997 may be excused by sec.2244(d)(2) ("The time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."), but Outlaw's application does not attempt to count excludable time. Unless two years and four months since Bracy are excludable, the application is too late. Outlaw did not seek collateral review on his judicial-bias theory in state court until June 6, 1998, so almost a full year passed after Bracy before he took an initial step. His application mentions that the state court dismissed the application (and that appeals failed to reinstate it), but in contravention of Circuit Rule 22.2(a)(3) Outlaw did not provide copies of the state court's decisions, nor did he tell us the state court's reasoning. If (as is likely, see 725 ILCS 5/122-1(c)) the state proceeding was itself dismissed as untimely, then none of the time is excludable. See Artuz v. Bennett, No. 99-1238 (U.S. Nov. 7, 2000), slip op. 4 & n.2; Fernandez v. Sternes, 227 F.3d 977 (7th Cir. 2000), and cases cited there.

The application for an order authorizing a second collateral attack is denied.